Charles FLOWERS, Julia Chairse, Willie Baker, Marquita Buchanan, Eddie Capnord, Rody Elliot, Cleveland Henderson, Bertha Morrow, Marilyn Davis, Jessie Nicholson, Plaintiffs

v.

DIRECT GENERAL INSURANCE COMPANY OF MISSISSIPPI, Direct General Insurance Agency, Inc., et al., Defendants.

Civil Action No. 4:12CV91.

United States District Court,
N.D. Mississippi,
Greenville Division.

July 23, 2013.

Floyd Mortimer Melton, III, Floyd M. Melton, Jr., Attorney Greenwood, MS, James Matthew Stephens, Perry Michael Yancey, Robert Gordon Methvin, Jr., McCallum & Methvin, PC, Birmingham, AL, for Plaintiffs.

Randy L. Dean, Walter D. Willson, Kevin A. Rogers, Wells Marble & Hurst, PLLC, Barry W. Ford, Scott Walker Pedigo, Adria Lynn Hertwig, Baker, Donelson, Bearman & Caldwell, Jackson, MS, Brian J. Levy, Lewis E. Hassett, Morris, Manning & Martin, LLP, Atlanta, GA, for Defendants.

### ORDER

MICHAEL P. MILLS, Chief Judge.

Defendants have filed a motion seeking for this court to reconsider its order remanding this case. In that motion, defendants appear to concede that, under *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir.2004), a 12(b)(6)-type standard applies to the fraudulent joinder issues in this case. This is a departure from their initial briefing, in which they asserted that a summary judgment-type standard was applicable and briefed the remand issues accordingly. Defendants now appeal to seek to retroactively convert their briefing to 12(b)(6) briefing, but such would be improper. The court deals with the briefing as presented, and defendants generally do not feel the need to emphasize that the

163. Rec. Doc. 34.

court should conduct a summary judgment-type analysis if they are confident in their ability to secure dismissal under Rule 12(b)(6) standards. Even if this court allowed defendants to convert their prior briefing to Rule 12 briefing, it would still not regard the language of the contracts in this case (which defendants assert is relevant even under a Rule 12 standard), to warrant dismissal under 12(b)(6).

If this court properly had jurisdiction over this case and were presented with a Rule 12 motion to dismiss, it would have been strongly inclined to allow plaintiffs discovery before considering any motion for summary judgment. Indeed, that is this court's default preference, at least in cases where, as here, the complaint makes detailed and specific allegations of wrongdoing. As noted in the court's opinion, the complaint in this case alleges that:

> The scheme to defraud the Plaintiffs and other Direct General customers is set out in detail in paragraphs 20 through 38. The actual fraudulent sales in which the agents sold the add-on products to the Plaintiffs pursuant to this fraudulent marketing scheme are set out in paragraphs 39 through 79. The Plaintiffs have pled where the fraudulent sales took place, who made the misrepresentations and omissions, when they took place, and how the sales took place. Precisely what statements were omitted and misrepresented have been specifically pled, statement by statement, in Counts I and II. These allegations, when viewed in their entirety, are sufficient to satisfy Rule 9(b).

Plaintiffs correctly characterize the allegations of their complaint, which is lengthy and highly specific. Defendants argue that, given the nature of the disclosures provided in the contracts which plaintiffs signed, they could not reasonably have relied upon any allegedly fraudulent representations made by defendants. While this may be an argument that ultimately carries the day in state court, the court would not grant a Rule 12 dismissal on the basis of that argument without first giving plaintiffs a chance to conduct discovery. If genuine issues precluding dismissal exist regarding even *one* of the numerous allegations of wrongdoing by plaintiffs, against even *one* non-diverse defendant, then this court lacks jurisdiction. It therefore makes little sense to engage in the sort of analysis which defendants urged in their remand briefing in this case.

While fraudulent joinder is still a relevant removal doctrine post-*Smallwood*, it will generally be applicable in only exceptional cases. Indeed, the court notes that, pre-*Smallwood*, fraudulent joinder removals played a far greater role in the Fifth Circuit's removal jurisprudence than in that of the other circuits. In a 2005 law journal article, University of Mississippi law professor E. Farish Percy wrote that a Westlaw search revealed the following numbers of district court opinions mentioning "fraudulent joinder" in the previous decade, divided by circuit:

| | |
|---|---|
| 1st | 15 |
| 2nd | 47 |
| 3rd | 94 |
| 4th | 69 |
| 5th | 918 |
| 6th | 66 |
| 7th | 74 |
| 8th | 43 |
| 9th | 94 |
| 10th | 24 |
| 11th | 113 |

E. Farish Percy. *Making a Federal Case of It: Removing Civil Cases to Federal Court Based on Fraudulent Joinder*, 91 Iowa L.Rev. 189, 240 tbl. 1 (2005). It is thus apparent that, pre-*Smallwood*, the Fifth Circuit's fraudulent joinder jurisprudence was something of an aberration among the federal circuits. In most cases, there is a fundamental anomaly, not to

mention a severe judicial inefficiency, in deciding the merits of a case in order to determine whether the court has jurisdiction over it. The Fifth Circuit retreated from this anomalous approach in *Smallwood*, but defendants' original briefing did not take account of this fact. Plaintiffs' claims in this case may ultimately prove to lack merit, but the court concludes that defendants' fraudulent joinder arguments are insufficient to establish federal jurisdiction. The motion to reconsider will therefore be denied.

It is therefore ordered that the motion to reconsider is denied.